# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : | CIVIL ACTION |
| v. | : | |
| NEW HOPE HEALTHCARE, INC. | : | NO. 09-5056 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                          **March 16, 2011**

Hartford Casualty Insurance Company ("Hartford") brought this action seeking a declaration that it has no duty to defend or indemnify New Hope Healthcare, Inc. ("New Hope") pursuant to a business liability insurance policy in a negligence action pending in Pennsylvania state court.[1] Hartford argues that the claims against New Hope in the underlying action are for professional negligence which are specifically excluded from coverage; or, in the alternative, the policy is void because New Hope made material misrepresentations in its application.

New Hope contends that Hartford has a duty to defend and indemnify it because the complaint in the underlying action does not allege professional negligence. It also contests that it knowingly included any materially false information in its application that would void the policy.

After reviewing the policy and the plaintiff's complaint in the underlying action, we conclude that Hartford has not met its burden of demonstrating that the insurance policy excuses it from defending New Hope or that the policy is void. Accordingly, Hartford's

---

[1] Jurisdiction in this declaratory judgment action is predicated on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

motion for summary judgment will be denied.

**The Underlying Action**

Mercedes Davis ("Davis"), on behalf of the estate of her late husband, Robert Davis ("Robert"), and in her own right, sued New Hope in the Berks County Court of Common Pleas. Her complaint asserts four causes of action arising out of the death of her husband while he was a resident of a personal care home. Davis alleges that New Hope, as manager of the personal care home owned by Evergreen Eldercare, Inc. ("Evergreen"), breached its duty of care to Robert by leaving him unsupervised and allowing him to leave the facility undetected on the night of December 14, 2007. Robert was discovered the next morning on the home's grounds with a right femoral neck fracture and contusions, which caused him severe pain, shock, and emotional damages. She claims his injuries placed him in a "weakened physical condition" and ultimately contributed to his death in September, 2009.

The state court complaint contains four counts. The first and third counts are brought on behalf of the estate; and the second and fourth counts, in the plaintiff's own right. The first count asserts a negligence cause of action for damages under the Pennsylvania Survival Act, 42 PA CONS. STAT. § 8302 (2010). The second count is for loss of consortium. The third and fourth counts, labeled as alternative theories, mirror the first and second counts. However, citing the MCARE Act, 40 PA STAT. ANN. § 1303.503 (2010), they specifically allege a deviation from "acceptable professional standards" applicable to a "health care provider."

The complaint recites the duty New Hope allegedly owed to the decedent and lists a number of negligent acts and omissions on New Hope's part. With respect to New

Hope's duties, the complaint alleges that New Hope, in its role as manager of the home, owed a "high duty of care to maintain a safe, secure and stable residential environment, and to assure appropriate policies and effective procedures to assure that Robert, and other residents, would have access to their assigned rooms at all times, and to provide reasonable and necessary security procedures and facilities to provide for the reasonable needs, security and safety of the residents, and in particular, the plaintiff, Robert."[2]

The litany of negligence allegations appears in paragraph 21 of the complaint, which reads as follows:

> 21. The aforesaid occurrence, and the damages and injuries sustained by the plaintiffs . . . were caused by the negligence, carelessness, mismanagement, and failure to use due care of the defendant, New Hope, which consisted of the following:
>     a. Failing to provide a safe and secure residential environment;
>     b. Failing to allow Robert access to his personal living quarters;
>     c. Failing to implement and maintain an effective key protocol for residents' rooms;
>     d. Failing to have a key available to staff personnel in order to allow Robert to have access to his assigned room;
>     e. Failing to adopt and follow procedures for providing access to locked patient rooms;
>     f. Failing to bring a key, or take steps to obtain a room key, to the premises after it was determined that no room key was available on the premises;
>     g. Failure to install and/or maintain a properly functioning exit alarm system;
>     h. Failing to monitor the premises, including patient rooms, during night hours and to be cognizant of the whereabouts of the residents, particularly the Plaintiff, Robert L. Davis;
>     i. Failing to train staff members properly to the resident

---

[2] *Compl.*, at 20.

care duties assigned;
j. Failing to maintain sufficient staffing to adequately supervise the residents on the premises;
k. Failing to attend to the safety and security of Robert once placing him in an unfamiliar room;
l. Failing to maintain appropriate procedures and facilities to ascertain the whereabouts of residents;
m. Failure to inspect and patrol the premises;
n. Failing to consider and to provide for the special needs of Robert, after placing him in a temporary room;
o. Failing to assure that Robert was cared for in a manner that respects his dignity;
p. Failure to provide adequate supervision, and assistive devices if needed, to prevent accidents;
q. Failure of the facility administration and ownership to manage the facility to meet the needs, of each resident, most particularly, Robert;
r. Admitting and retaining a resident whose needs they either knew, or should have known, they could not meet;
s. Failure to follow physicians orders;
t. Failing to equip the exterior doors of The Villa with exit alarms in the absence of keeping Robert within constant visual oversight when out of his room;
u. Failure to take reasonable precautions against elopement by residents, and particularly, by Robert.[3]

Our task is to decide whether Hartford, at this time, has a duty to defend and indemnify New Hope against any of these alleged causes of action. In other words, we must determine whether any of the claims are potentially covered by the policy issued to New Hope.

## Legal Standard

The interpretation of an insurance contract is a question of law. *J.C. Penney Life Ins. Co. v Pilosi,* 393 F.3d 356, 360 (3d Cir. 2004) (citing *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999)). "Whether a particular loss is within the coverage of an

---

[3] *Compl.*, at 21.

insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252, 1255 (Pa. Super. 1995), *rev'd on other grounds*, 701 A.2d 1075 (Pa. 1997).

A court must give effect to the plain language of the insurance contract read in its entirety. *Lexington Ins. Co. v. W. Pa. Hosp.,* 423 F.3d 318, 324 (3d Cir. 2005) (quoting *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 901 (3d Cir. 1997)). When the policy language is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). However, the policy's language may not be stretched beyond its plain meaning to create an ambiguity. *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2008).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995). On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving, by uncontradicted facts, that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002); *Butterfield*, 670 A.2d at 651-52. Policy exclusions are strictly construed against the insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

**Duty to Defend**

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 896 n.7 (Pa. 2006). An insurer may have a duty to defend even though it may have no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

Because the duty to defend is broader than the duty to indemnify, the complaint in the underlying action must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997). To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *QBE Ins. Corp. v. M&S Landis Corp.,* 915 A.2d 1222, 1225 (Pa. Super. 2007). In other words, the focus of the coverage inquiry is on the substance, not the form, of the allegations.

An insurer is obligated to defend the insured against any suit arising under the policy "even if the suit is groundless, false, or fraudulent." *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994) (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321 (Pa. 1963)). Consequently, whenever the complaint sets forth facts raising claims that could possibly come within the policy's coverage, the insurer's duty to defend is triggered. *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 931 (Pa. Super. 2004); *Belser*

*v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super. 2002). If a single claim in a multiple claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746; *American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir. 1985).

Applying these principles to this case, we examine the insurance policy and the allegations in the state court complaint. The material facts as to what the complaint in the state action alleges New Hope did and the Hartford insurance policy language are not in dispute. The parties may disagree about what they mean; but, they do not disagree as to what they say. Thus, we must decide whether the insurer has a duty to defend under the policy as a matter of law.

## Discussion

The business liability policy issued to New Hope assures that Hartford "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies."[4] It further provides that it "will have the right and duty to defend the insured against any 'suit' seeking those damages."[5]

The policy specifically excludes coverage of claims "arising out of the rendering of or failure to render any professional service."[6] Professional services include, but are not

---

[4] *Business Liability Coverage*, § A(1)(a).

[5] *Business Liability Coverage*, § A(1)(a).

[6] *Business Liability Coverage*, § B(2)(j).

7

limited to:[7]

> (2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;
> (3) Supervisory, inspection, architectural or engineering activities;
> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
> (5) Any health or therapeutic service treatment, advice or instruction[.]

An endorsement entitled "Exclusion - Testing or Consulting Errors and Omissions" states:[8]

> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:
> 1. An error, omission, defect or deficiency in:
>    a. Any test performed; or
>    b. An evaluation, a consultation or advice given, by or on behalf of any insured;
> 2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or
> 3. The rendering of or failure to render any service by you or on your behalf in connection with the selling, licensing, franchising or furnishing of your computer software to others including electronic data processing programs, designs, specifications, manuals and instructions.

Hartford contends it has no obligation to defend and to indemnify New Hope because the underlying action arises from negligent management services which fall under the policy's "professional services" exclusion. New Hope counters that because the allegations in the state court action do not involve professional services, the claims are covered by the policy.

The insurance policy does not define the term "professional services." Instead, it

---

[7] *Business Liability Coverage*, § B(2)(j).

[8] *Exclusion - Testing or Consulting and Omissions.*

8

sets out a non-exclusive list of examples. Thus, the phrase is ambiguous, and must be construed against Hartford. *See Westport Ins. Corp. v. Bayer,* 284 F.3d 489, 497 (3d Cir. 2002); *The Home Ins. Co. v. The Law Offices of Jonathan DeYoung, P.C.,* 32 F. Supp. 2d 219, 230 (E.D. Pa. 1998). Certainly, the term may not be given a broad meaning. It is used in an exclusion which must be construed in favor of New Hope and against Hartford. Consequently, "professional services" cannot be given an expansive reading, but rather a restrictive one.

Hartford argues that the allegations in the complaint fall within several of the enumerated examples of "professional services" contained in the insurance policy. First, Hartford contends that the allegations arise from New Hope's "[p]reparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications," one of the examples of professional services identified in the policy. There are no explicit or implicit allegations in the complaint relating to such services. Nor can the words in the complaint be construed to include them. Thus, the exclusion does not apply to the negligence counts - counts one and two.

Second, Hartford relies on the exclusion for "[s]upervisory, inspection, architectural or engineering activities." It argues that because the complaint alleges that New Hope was negligent in its management duties, including failing to supervise Evergreen's employees and inspect the home's grounds, this exclusion applies. Even if the terms "supervisory" and "inspection" could be construed to apply to the management services New Hope provided to the home, the complaint alleges broader claims. For instance, the complaint alleges that New Hope failed to "install and/or maintain a properly functioning exit alarm

system," and failed to "allow Robert access to his personal living quarters." These allegations have nothing to do with management of the home, supervision of employees, or inspection of facilities. Accordingly, they are not within the ambit of the exclusion.

Third, Hartford invokes the professional services exclusion for "[m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction," and "health or therapeutic service treatment, advice or instruction." This exclusion does apply to the third and fourth counts of the complaint. In those counts, the plaintiff alleges that New Hope, as a "health care provider," deviated from "acceptable professional standards" as delineated in the MCARE Act.[9] There is no question that the policy does not cover the professional negligence claims. Therefore, at this stage of the state court proceedings, we can and do conclude that Hartford has no duty to defend and to indemnify New Hope on these professional negligence claims.

Hartford, however, is not relieved of its duty to defend New Hope in the state action. The complaint alleges breaches of professional and non-professional duties. Indeed, there are several allegations of negligence that do not arise from rendering professional services. Failing to "monitor the premises, including patient rooms, during night hours and to be cognizant of the whereabouts of the residents," does not require the use or application of special learning or training. Nor does patrolling the premises. It may be that the plaintiff cannot prove non-professional negligence, but can prove professional negligence. In that case, there would be no duty to indemnify. At this point, we can only consider the plaintiff's allegations in the state court complaint, not what may or may not be proven at trial.

---

[9] *Compl.*, at 34, 36.

10

The existence of potentially covered claims alone imposes upon the insurer a duty to defend until it is determined in the underlying action that the plaintiff cannot recover on those claims. *See Frog, Switch,* 193 F.3d at 746. Because there are claims that are not excluded, Hartford has a duty to defend New Hope.

Pursuant to an endorsement to the policy, errors or omissions resulting from "tests," "evaluations," "consultations," or "advice" are not covered. Hartford argues that New Hope's liability in the underlying action arises from its failure to evaluate Evergreen's procedures and to consult with and advise Evergreen and its staff. Thus, it contends that these claims fall within the scope of the endorsement.

The terms "evaluation," "consultation," and "advice" are not defined in the policy. However, given their plain meaning and considering the allegations in the complaint, it is clear that the endorsement does not apply. The complaint includes a litany of allegations against New Hope, none of which involve errors in testing, evaluating, consulting or advice. Therefore, the endorsement does not apply to the underlying action.

Hartford alternatively argues that the policy is void because New Hope falsely represented the nature of its business. It claims that had it known at the time of the application that New Hope provided oversight of its clients' business and employees, it would not have issued the policy. To establish that the insurance policy is void as a matter of law, Hartford must prove by clear and convincing evidence that: (1) New Hope, in its insurance application, made a false representation or failed to disclose information;[10] (2) New Hope knew that the representation was false or was made in bad faith, or knowingly

---

[10] False representation includes the intentional omission of material information. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 522 (3d Cir. 2004).

failed to disclose information; (3) the false representation or the withheld information was material to the risk being insured; and, (4) Hartford relied upon the false information in providing coverage to the insured. *See Matincheck v. John Alden Life Ins. Co.*, 93 F.3d 96, 102-03 (3d Cir. 1996); *Rohm & Haas Co. v. Continental Cas. Co.*, 781 A.2d 1172, 1179-80 (Pa. 2001).

The clear and convincing standard of proof applies where, as here, an insurer seeks rescission of the policy based upon material misrepresentations in the insurance application.[11] *Tudor Ins. Co. v. Township of Stowe*, 697 A.2d 1010, 1015-16 (Pa. Super. 1997); *see also Batka v. Liberty Mut. Fire Ins. Co.*, 704 F.2d 684, 687 (3d Cir. 1983). This heightened burden of proof is applied when deciding summary judgment in an insurance case where the issue is fraud in the application. *Justofin*, 372 F.3d at 521.

Clear and convincing evidence is testimony that is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Cicchetti*, 743 A.2d 431, 443 (Pa. 2000) (citations and internal quotations omitted). Although the standard does not rise to beyond a reasonable doubt, it is higher than a mere preponderance of the evidence. *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003).

Hartford argues that New Hope made an intentional misrepresentation in its application for insurance. New Hope's insurance broker, Edward Doerrman, completed the insurance application using Hartford's online application system. One of the questions in the application was whether "the insured's responsibilities include project management

---

[11] The parties agree that Pennsylvania law controls.

or oversight of their client's operations and/or employees?" Doerrman answered in the negative. Hartford argues that it relied on this knowingly false response, which was material to the risk being insured.

In support of its argument that Doerrman's answer was knowingly false, Hartford cited the deposition testimony of New Hope's president and owner, Richard Halko. In his deposition, Halko admitted that New Hope is in the business of "management and oversight for the operation of facilities." *Halko Depo.,* p. 21, 1-2. Hartford also referred to a document labeled "Executive Summary," which was created by New Hope to summarize the services it provided its client.[12] The second page of the Executive Summary, titled "Staff Development," reports that New Hope is "involved in every level of operational, staffing, and decision-making process normally under the control and direction of the Facility Administrator." According to Hartford, in light of these admissions, the "'only reasonable inference'" that can be drawn is that Doerrman, as New Hope's agent, made the misrepresentation in "bad faith and with knowledge of its falsity." *Pl. Brief in Support of Summary Judgment,* at p. 19.

Hartford cannot reasonably contend that it did not know what New Hope's business was when it issued the policy. In its application, Doerrman described New Hope's operations as "Management consultants to various businesses, with a concentration on social services agencies." Thus, even if the answer to the question in the application was inaccurate, it was clarified by the description of New Hope's business.

---

[12] The Executive Summary summarizes New Hope's responsibilities. *Halko Dep.,* pp. 76, 15-16. It was submitted to the bankruptcy court in order to demonstrate New Hope's "qualifications." *Halko Dep.,* pp. 76, 22-23.

**Conclusion**

Because the complaint in the underlying action asserts claims that are not excluded by the insurance policy, and the errors and omissions endorsement does not apply to exclude coverage, Hartford has a duty to defend New Hope.[13]  Also, there is insufficient evidence that New Hope knowingly included material false information in its application for insurance or that Hartford relied on such information.  Therefore, Hartford's motion for summary judgment will be denied and it will be required to defend New Hope in the underlying action.

---

[13] In addition to requesting declaratory judgment that it has no duty to defend New Hope in the underlying action, Hartford also requests a declaration that it has no duty to indemnify New Hope. Because resolution of the underlying action is still pending, we refrain from deciding Hartford's duty to indemnify. *See TDY Indus. Inc. v. Natl. Freight Trans. Inc.,* No. 07-984, 2009 WL 691947, at *11 (W.D. Pa. March 12, 2009) ("[a]s a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action."); *American States Ins. Co. v Component Tech., Inc.,* 420 F. Supp. 2d 373, 375-76 (M.D. Pa. 2005) (determination of a duty to indemnify must await resolution of the underlying suits against the insured); *Allstate Insurance Co. v. Lombardi,* No 02-1250, 2003 WL 21666090, at *3 (E.D. Pa. July 17, 2003) ("where it is determined that the insurer does have a duty to defend, and where the liability of the insured in the underlying action has not yet been determined, the issue of indemnification cannot be addressed or resolved by the declaratory court.").